**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

UNITED STATES OF AMERICA

V.  CRIMINAL NO. 2:09CR126

KEVIN DEWAYNE MCCOY

**ORDER**

This cause comes before the court on the motion of defendant, Kevin Dewayne McCoy, to suppress evidence found during the search of his vehicle.

The court conducted a hearing on this motion and determined the following facts. Officer Jerry Lee of the Horn Lake Police Department pulled McCoy over around 1:17 a.m. on April 2, 2009 . Lee initiated the stop because McCoy's tag was not visible as required by Mississippi law. The tag was not visible because McCoy's tag light had burned out.

McCoy provided Lee with his driver's license and proof of insurance. McCoy had a valid license, but his insurance was expired. Lee radioed in the information provided and determined McCoy did not have any outstanding warrants, but he had a prior criminal history.

After completing his computer check, Lee walked back to McCoy's car and asked him to step out and look at the burned out tag light. Lee then proceeded to question McCoy while retaining possession of his driver's license and insurance card

He asked McCoy if he had ever been arrested. McCoy stated that he had a couple of drug charges. Lee then asked if McCoy had also been convicted of a weapons charge. McCoy confirmed that he had. Lee asked McCoy if there were guns or drugs in the car. McCoy responded there were not.

Lee then asked if he could search the car. The two police officers who testified stated McCoy consented to the search. Their memory of McCoy's statement was that he said, "yes, you can search the vehicle." McCoy says his statement was "go ahead because you are going to do what you want to do." The court found the testimony of the officers to be more credible than the testimony of McCoy. Lee never told McCoy he was free to leave, but he did tell him he could withdraw his consent to search.

While searching the vehicle Lee found a 9mm handgun, forty-five grams of crack cocaine, fifty-four Lortabs, two other pills, a cell phone, and a set of digital scales. Lee then placed McCoy under arrest. The entire stop took less than twenty minutes.

The Fifth Circuit has a clear standard for such incidents. In *United States v. Jones*, the court held:

> The stopping of a vehicle and the detention of its occupants is a seizure within the meaning of the Fourth Amendment. *United States v. Shabazz*, 993 F.2d 431, 434 (5th Cir. 1993). But where there is a reasonable and articulable suspicion that a person has committed or is about to commit a crime, limited searches and seizures are permissible under the Fourth Amendment despite the lack of probable cause. *See United States v. Kye Soo Lee*, 898 F.2d 1034, 1039 (5th Cir. 1990) (referring to the reasonable suspicion standard enunciated in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). To determine if a seizure has exceeded the scope of a permissible *Terry* stop, we must undertake a two-step inquiry: 1) whether the officer's action was justified at its inception; and 2) whether it was reasonably related in scope to the circumstances that justified the interference in the first place. *See United States v. Kelley*, 981 F.2d 1464, 1467 (5th Cir. 1993).

234 F.3d 234, 240 (5th Cir. 2000).

There is no dispute that the initial stop was permissible. McCoy asserts the stop exceeded its permissible scope at the time Lee began to ask questions about drugs and guns.

The government makes three arguments as to why this portion of the search was

permissible. First the government argues that the search was based on consent given during a reasonable traffic stop. Secondly, the government argues Lee had a reasonable suspicion that McCoy was in possession of guns or drugs. Finally, the government argues McCoy's consent to search the vehicle overcomes any Fourth Amendment violation.

McCoy counters those arguments alleging any consent given was not voluntary or else was not an independent act of free will.

The government's first argument requires the court to apply the two step inquiry found in *Kelley*. The first step is to determine if the officer's action was justified at its inception. As stated above there is no dispute it was.

The second inquiry is whether the totality of the stop was reasonably related to the circumstances that justified the initial interference. The stop was plainly reasonable up until the point where Lee returned to McCoy's vehicle with McCoy's license. *See Jones*, 234 F.3d at 240 (citing *United States v. Dortch*, 199 F.3d 193, 198 (5th Cir. 1999)) (An officer has "every right to request the defendant['s] license[] and . . . to run a computer check on those documents" as part of a valid traffic stop).

When Lee approached McCoy's vehicle after running the permissible check he asked McCoy to step out of the vehicle and look at the burned out light. While looking at the light Lee asked McCoy a brief series of questions related to his prior criminal history. The Fifth Circuit has "reject[ed] any notion that a police officer's questioning, even on a subject unrelated to the purpose of the stop, is itself a Fourth Amendment violation." *Shabazz*, 993 F.2d at 437. The court has held that extensive questioning may create a Fourth Amendment violation. *Id*. (citing *United States v. Kelley*, 981 F.2d 1464, 1470 (5th Cir. 1993)). The questioning here was minimal and was itself not a Fourth Amendment violation.

However, the Fifth Circuit has held that once a computer check is completed and the officer decides whether to issue a citation a detention must end. *United States v. Santiago*, 310 F.3d 336, 341-342 (5th Cir. 2002). At the time Lee returned to McCoy's vehicle this period passed. Lee then needed a reasonable suspicion of another crime being afoot in order to constitutionally continue the stop. *Id*. at 342 (citing *Jones*, 234 F.3d at 241). The government argues the inconsistent answers given by McCoy to questions about his criminal history and the history itself created that reasonable suspicion.

There are a number of Fifth Circuit cases which the defendant argues are close enough factually to the instant circumstances to preclude a finding that reasonable suspicion exists. *See Santiago*, 310 F.3d at 342 (holding nervousness and conflicting statements did not permit stop to last past computer check); *Jones*, 234 F.3d at 241-42 (finding discrepancies between the driver and passsenger's explanations about their destination and purpose for traveling, the lack of the rental car's authorized driver's presence at the scene, and the driver's criminal history related to crack-cocaine possession did not permit detention after a computer check); *United States v. Dortch*, 199 F.3d 193, 199 (5th Cir. 1999) (holding nervousness, inconsistent answers as to one's travel plans, and a rental agreement listing another as the only authorized driver of a vehicle did not give the police reasonable suspicion to continue stop after computer check was complete).

However, there are also a number of cases where the Fifth Circuit has found reasonable suspicion under similar circumstances. *See United States v. Sierra*, 294 Fed. Appx. 884, 888-89 (5th Cir. 2008) (finding nervousness, presence of snack food, and maps of known drug trafficking border towns created reasonable suspicion); *United States v. $34,000*, 288 Fed. Appx. 139, 143 (5th Cir. 2008) (holding inconsistent stories, nervousness, attempt to elude police, and prior drug history created reasonable suspicion); *United States v. Brown*, 209 Fed. Appx. 450,

453 (suspects slumping in their seats and appearance of them attempting to conceal something under the dashboard when police approached a parked car created reasonable suspicion).

These cases do not lay down a clear doctrine of what is and is not sufficient for reasonable suspicion to exist. Instead they remind the court that it must:

> consider the facts and circumstances of each case, giving due regard to the experience and training of the law enforcement officers, to determine whether the actions taken by the officers, including the lenght of the detention, were reasonable under the circumstances.

*United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004).

In this case Lee stopped McCoy in the early morning hours. McCoy had a history of drug and weapon's convictions and he lied about the weapon's conviction until specifically confronted as to that portion of his history. These factors created a reasonable suspicion that McCoy was hiding something from the officer and based on his prior history with guns and drugs a reasonable officer could have determined that what he was hiding related to illegal contraband. As such the court finds Lee had a reasonable suspicion to briefly investigate whether or not McCoy was carrying guns or drugs.

During the brief questioning McCoy gave consent to search his vehicle. Consent searches are a well settled exception to normal Fourth Amendment requirements. *United States v. Bustamonte*, 412 U.S. 218, 219 (1973) (citing *Davis v. United States*, 328 U.S. 582, 593-94 (1946); *Zap v. United States*, 328 U.S. 624, 630 (1946) (overruled on other grounds)). Consent to search given during a valid detention must be voluntary. *United States v. Jenson*, 462 F.3d 399, 406 (5th Cir. 2006). In determining whether consent was voluntary the court examines the following factors:

> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's

> cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*Id*. (quoting *Jones*, 234 F.3d at 242).

The court finds the voluntariness of the defendant's custodial status to be neutral. The fact Lee was in possession of McCoy's driver's license weighs in favor of an involuntary status. However, the interactions between McCoy and Lee appear to be cordial. Lee is simply showing McCoy why he pulled him over at the time the consent is given. Based on the evidence presented, the court finds it doubtful McCoy still considered himself as being investigated while the officer showed him the burned out tag light.

Lee maintaining McCoy's driver's license was a coercive police procedure. *See e.g.*, *United States v. Cavitt*, 550 F.3d 430, 439 (5th Cir. 2008) (citing *Chavez-Villarreal*, 3 F.3d at128). However, this coercion was mitigated by the fact Lee communicated to McCoy that he could withdraw his consent to the search. Thus even though coercion may have played some role in obtaining permission to search, Lee offered McCoy a way out.

Throughout the stop McCoy cooperated with the police. This factor weighs heavily in favor of finding the consent voluntary.

It is not clear that McCoy fully understood his right to refuse consent to search his vehicle. However, any problem under this prong is mitigated by Lee's statement that McCoy could withdraw his consent at any time.

While the court does not have much information about McCoy's educational background, it is clear that he is of at least average intelligence. Additionally, McCoy has prior experience in dealing with law enforcement. This gives him an advantage in better understanding his rights and the criminal process. This factor weighs in favor of finding the consent to be voluntarily

given.

Finally, the testimony shows that McCoy had a belief that no incriminating evidence would be found during the course of the stop. The contraband was hidden in a secret compartment. The fact that McCoy thought the police would search his car without finding any contraband weighs in favor of finding McCoy's consent to being voluntarily given.

Based on the totality of circumstances the court finds McCoy gave voluntary consent for the police to search his vehicle.

As discussed above the parties argue as to whether McCoy's consent was an independent act of free will. However, this analysis is only necessary when consent is given following a violation of one's Fourth Amendment rights. *United States v. Khanalizadeh*, 493 F.3d 479, 484 (5th Cir. 2007) (citing *Jenson*, 462 F.3d at 407). Since McCoy's Fourth Amendment rights were not violated this analysis is unnecessary.

The police had a reasonable suspicion to briefly investigate whether McCoy was in possession of drugs or guns. During this brief period of investigation McCoy voluntarily consented to a search of his vehicle. This type of investigation and search is permissible under the Fourth Amendment.

McCoy's motion [21] to suppress is DENIED.

This the 21st day of April, 2010.

/s/ MICHAEL P. MILLS
CHIEF JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI